UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**RICHARD L. QUINN, JR.,**

    **Plaintiff,**

                                                                       **Civil Action 2:11-cv-268**
    v.                                                     **Judge James L. Graham**
                                                                **Magistrate Judge Elizabeth P. Deavers**


**ROBIN KNAB, WARDEN, et al.,**

    **Defendants.**


## REPORT AND RECOMMENDATION

Plaintiff, Richard L. Quinn, Jr., an inmate in the custody of the Chillicothe Correctional Institution ("CCI") who is proceeding without the assistance of counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that Defendants impeded his ability to exercise his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, and the Equal Protection Clause. This matter is before the United States Magistrate Judge for a Report and Recommendation on Defendants' Motion for Judgment on the Pleadings. (ECF No. 38.) For the reasons stated below, it is **RECOMMENDED** Defendants' Motion be **GRANTED IN PART AND DENIED IN PART**. It is further **RECOMMENDED**, to the extent Plaintiff seeks to assert it, that his retaliation claim be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that Mr. Free be **DISMISSED** as a Defendant.

**I.**

Plaintiff's claims arise from Defendants' denial of his requests for a religious accommodation. Plaintiff's Amended Complaint contains different exhibits, more detailed allegations, and adds Defendants. (ECF No. 12.) Because Plaintiff is proceeding without the assistance of counsel, the Court construes Plaintiff's Amended Complaint as incorporating his original Complaint in its entirety. *See Abessolo v. Smith*, No. 1:11-cv-680, 2012 WL 668773, at *1 (S.D. Ohio Feb. 29, 2012) (construing *pro se* plaintiff's amended complaint as incorporating allegations and exhibits of original complaint); *cf. Johnson v. United States*, 457 F. App'x 462, 467 (6th Cir. 2012) ("[P]*ro se* pleadings are to be liberally construed . . . .").

According to his Complaint and Amended Complaint, Plaintiff requested a religious accommodation on December 20, 2010. More specifically, he asked to take "a Vow of a Nazarite." (Compl. ¶ 6, ECF No. 12.) Plaintiff alleges that Reverand Freeman, CCI's Chaplain; Mr. Robinson, CCI Deputy Warden of Special Services; and the Religious Services Committee denied his requests and his appeals, effectively denying his right to exercise his racial separatist religion. Plaintiff alleges that CCI's Warden, Robin Knab, also "signed off on the denial." (Am. Compl. 3, ECF No. 12.) In his Request for Religious Accommodation, attached to his original Complaint, Plaintiff identifies his religion as "Christian Identity." (Compl. 14, ECF No. 5.) He explains in an attachment to his request that he identifies him self as "Christian 'Israel' Identity" and that his practice of this religion includes "invok[ing] upon [himself] to take a Vow of the Nazarite for any period seeing fit as the Holy Spirit allows." (*Id*. at 14–18.) He goes on to explain, in detail, what the Vow of a Nazarite entails, referencing Bible verses that he asserts support each of the Vow's components. (*Id*.) For example, he indicates that he "must," among other things: not cut his hair with a razor; not eat certain types of food; not work on the Sabbath;

2

and not touch anything dead.  (*Id*.)  He explains that individuals belonging to the Christian Identity religion "follow the Holy Bible, not just the things we like, but all of it."  (*Id*.)

According to Plaintiff, nonwhites transferred from Ross Correctional Institution ("RCI") have been allowed a religious accommodation to take the Vow of a Nazarite.  He speculates that Defendants are denying his request for a religious accommodation because he is white and practices a separatist religion.

On March 1, 2011, Plaintiff filed an informal complaint with Warden Knab, requesting a to move to a cell where he would not have to interact with nonwhites, which he alleges is against his practice of his racial-separatist religion.  He reported that his interaction with nonwhites had caused him "serious uneasiness and conflict."  (*Id*. at 19.)  He concluded the informal complaint as follows: "I hold you and this prison system responsible for any damage or harm that [might] come about by not following the Law on your part."  (*Id*.)  Mr. Free, CCI's Institutional Inspector, filed a conduct report against Plaintiff based upon the language he included in the grievance, citing a violation of a rule that prohibits threat of bodily harm to another.  Plaintiff alleges that Mr. Free took his statement out of context and filed the conduct report against him in retaliation for his attempts to practice his non-mainstream, separatist religion.  The Rules Infraction Board ("RIB") found Plaintiff guilty of the violation and as a penalty, required him to spend 15 days in segregation or "the hole."  (Compl. 5, ECF No. 5; Am. Compl. 3, ECF No. 12.)  Plaintiff alleges that Mr. Mohr, the Ohio Department of Rehabilitation and Correction Director, affirmed the RIB's decision.

In his Amended Complaint, Plaintiff names the following individuals as Defendants: Warden Knab, Reverend Freeman, CCI Deputy Wardon of Special Services Mr. Robinson, Mr. Free, and Mr. Mohr.  Defendants Mohr and Freeman have been dismissed for failure to effect

3

service. (Feb. 1, 2012 Order, ECF No. 37.) Plaintiff asserts claims under RLUIPA and also under § 1983 for violation of his equal protection rights and right to exercise his religion. In addition, it appears that Plaintiff is attempting to assert a retaliation claim. He requests to be transferred to any one of four medium security prisons that he believes would accommodate his requests to take a Nazarite Vow. (Compl. 6, ECF No. 5.) Further, in his Amended Complaint, as in his original Complaint, Plaintiff seeks nominal damages and compensatory damages in the amount of $10,000.

The remaining Defendants have moved for dismissal, asserting that Plaintiff has failed to allege facts sufficient to give rise to a plausible claim for relief. Defendants further assert that they are entitled to Eleventh Amendment Immunity. Plaintiff did not file a memorandum in opposition to Defendants' Motion for Judgment on the Pleadings.

## II.

A motion filed under Federal Rule of Civil Procedure 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

4

Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont County Sheriff's Dept.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

**III.**

The Court examines Defendants' arguments in favor of dismissal with regard to each of Plaintiff's causes of action before considering whether the Eleventh Amendment operates to as a jurisdictional bar to Plaintiff's § 1983 claims.

**A.      RLUIPA and Free Exercise of Religion**

Plaintiff alleges that Defendants' refusal to allow him to take a Vow of a Nazarite violated RLUIPA and his right to free exercise of his religion under the First Amendment. Defendants contend that Plaintiff's First Amendment and RLUIPA claims are so factually deficient that dismissal for failure to state a claim is appropriate. The undersigned disagrees.

5

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011). "Under § 1983, a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (citation and internal quotation marks omitted). The prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs. *Id*. "An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hayes*, 424 F. App'x at 555 (internal quotation marks and citations omitted). Under § 1983, if the action substantially burdens a prisoner's sincerely held beliefs, the action "is valid if it is 'reasonably related to legitimate penological interests.'" *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

RLUIPA is less deferential and affords more constitutional protection to prisoners than § 1983. "Under RLUIPA, '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability,' unless the government can show (1) that the imposition of the burden 'is in furtherance of a compelling governmental interest,' and (2) the burden furthers that interest by use of the 'least restrictive means.'" *Barhite*, 377 F. App'x at 510 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).

6

Defendants incorrectly argue that Plaintiff has failed to state a claim because he has not sufficiently alleged the following:

- What religion Plaintiff practices ("separatist religion" is not sufficient);

- Whether Plaintiff has a sincerely held belief in that religion;

- Whether taking a "vow of a Nazarite" is a fundamental tenet of his religion;

- What a "vow of a Nazarite" actual is and the policies and practices it implicates;

- Whether Plaintiff has submitted any further requests for accommodation regarding religious practices required after taking a "vow of a Nazarite"; and

- How the denial of his requested accommodation interfered with, or substantially burdened, the practice of his religion.

(Defs.' Mot. 4, ECF No. 38.) Defendants assert that "[t]he only information provided by Plaintiff is that he is white and practices a separatist religion." (*Id*.) Contrary to Defendants' assertion, Plaintiff's original Complaint, Amended Complaint, and the exhibits to these pleadings provide the following factual content: Plaintiff's religion is Christian Identity, and more specifically, Christian Israel Identity; a practice within this religion is to take a Vow of the Nazarite; he believes that the Bible calls him to take the Vow and that his religion requires him to follow the Bible; the Holy Spirit guides him as to when and for how long he is to take this Vow; the Vow entails, among other things, restrictions on cutting hair, foods consumed, and working on the Sabbath. Defendants correctly note that Plaintiff did not explicitly allege that his religious beliefs are "sincerely held." Such a degree of explicitness, however, is not required to survive a motion for judgment on the pleadings. *See Twombly*, 550 U.S. at 570 (holding that "facial plausibility" is established "when the plaintiff pleads factual content that allows the court

7

to draw the reasonable inference . . ."); *see also Watts v. Florida Intern. Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (internal citation omitted) ("In *Twombly* terms, [the plaintiff] has certainly alleged 'enough factual matter (taken as true) to suggest' that his religious belief was sincerely held, putting forward 'plausible grounds to infer' that it was sincerely held and 'identifying facts that are suggestive enough to render [the sincerity of his belief] plausible.' That is all that is required at this stage of the litigation."). The undersigned finds that Plaintiff's pleadings and the attached exhibits provide sufficient factual content from which the Court can reasonably infer that taking the Nazarite Vow is a genuine religious observance to him. Because Plaintiff has sufficiently alleged a *prima facie* violation, the undersigned recommends that the Court deny Defendants' Motion for Judgment on the Pleadings with regards to Plaintiff's First Amendment free exercise and RLUIPA claims.

**B.     Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Heyne v. Metro. Nashville Pub. Schools*, 655 F.3d 556, 570 (6th Cir. 2011) (internal quotation marks and citations omitted).

The undersigned finds that Plaintiff has failed to state a claim against Defendants under § 1983 for violating his right to equal protection. This cause of action flows from Plaintiff's alleged observation that nonwhites at another ODRC institution, namely, Ross Correctional

Institution ("RCI"), have been permitted to take the Nazarite Vow. Based on this observation, Plaintiff speculates that Defendants have denied his requests to take the Vow because he is white. His requested injunctive relief, however, demonstrates that Plaintiff cannot allege that he is similarly situated to the nonwhites at RCI who have been permitted to take the Vow. Specifically, Plaintiff requests a transfer to RCI so that he, too, can practice his religion. Thus, Plaintiff concedes that institutional placement is a relevant and even an outcome-determinative consideration and that he is not similarly situated to the nonwhites who have been permitted to take the Vow with regard to this consideration. Consistently, Plaintiff does not allege that he is similarly situated to the nonwhites from RCI who were permitted to take the Vow.[1] Nor does he make allegations from which the Court could infer that Defendants even considered his race when denying his request for a religious accommodation. Accordingly, it is recommended that the Court grant Defendants' Motion for Judgment on the Pleadings as to Plaintiff's equal protection claim.

**C. Retaliation**

It is unclear from the face of Plaintiff's pleadings whether he is asserting a retaliation claim against Mr. Free arising from his filing of a conduct report. Indeed, Defendants, understandably, did not interpret Plaintiff's pleadings as raising a retaliation claim, and

---

[1]To be clear, the undersigned's recommendation of dismissal of Plaintiff's equal protection claim is not premised solely upon Plaintiff's failure to allege that he is similarly situated to the nonwhites who were permitted to take the Nazarite Vow. *See Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir. 2012) (citations omitted) ("[E]ven if [the inmate] had failed to include allegations about similarly-situated prisoners, his [equal protection claim] still should not have been dismissed at the pleadings stage.) Instead, the undersigned concludes that his claim lacks plausibility because he has, in essence, conceded that he is not similarly situated to the nonwhites who have been permitted to take the Vow and also because he makes no allegations which could support an inference that race accounted for the alleged difference in treatment.

9

therefore, raised no arguments with regard to such a claim in their Motion for Judgment on the Pleadings. (*See* Defs.' Mot. 3, ECF No. 38 (positing that Plaintiff has asserted a First Amendment free exercise claim, a RLUIPA claim, and an equal protection claim).) Moreover, in listing his causes of action in his Amended Complaint, he makes no mention of a retaliation claim. The bulk of his allegations in his Amended Complaint, however, concern the circumstances surrounding Mr. Free's filing of a conduct report and the consequences flowing from the report. (*See* Am. Compl. ¶¶ 7–11, ECF No. 12.) Further, in his original Complaint, Plaintiff states "I feel [Mr. Free's filing of the conduct report] is retaliat[ion] for me trying to exercise my nonmainstream religion." (Compl. 5, ECF No. 5.) According to Plaintiff, Mr. Free based his conduct report on a statement "taken out of context" that he had made in an informal complaint. (*Id.*) As a result of Mr. Free's conduct report, Plaintiff spent fifteen days in segregation. Construing the allegations in the original Complaint and Amended Complaint liberally, the undersigned concludes that Plaintiff intends to include a retaliation claim against Mr. Free.

The undersigned must, therefore, consider whether Plaintiff's retaliation claim should be dismissed pursuant to 28 U.S.C. § 1915, the federal *in forma pauperis* statute. Congress enacted § 1915 in order to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[2]

---

[2] Formerly 28 U.S.C. § 1915(d).

as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court *shall dismiss the case at any time* if the court determines that--
>
> \* \* \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .
>
> \* \* \*

28 U.S.C. § 1915(e)(2)(B)(i) & (ii) (emphasis added); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action "at any time" upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *Id*.

Even construing Plaintiff's allegations liberally, the undersigned recommends dismissal of his retaliation claim pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. The elements of a First Amendment retaliation claim are as follows:

> "(1) the plaintiff engaged in protected conduct; (2) and adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000). Assuming, for purposes of this Report and Recommendation, that Mr. Free's conduct was sufficiently adverse to satisfy the second element of a retaliation claim, Plaintiff's claim fails because he has not alleged any facts establishing a causal connection between his protected activity and the adverse action. It is not enough for Plaintiff to allege that

he "feels" like Mr. Free acted with a retaliatory motive. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)) ("[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'") *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (citations omitted) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims . . . ."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Because the Court is unable to infer retaliatory intent from Plaintiff's vague and conclusory assertion, it is recommended that Plaintiff's retaliation claim be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). It is further recommended that Mr. Free be dismissed as a Defendant because Plaintiff's allegations concerning Mr. Free relate only to his retaliation claim.

### D. Eleventh Amendment Immunity

Defendants assert that Plaintiff's § 1983 claims fails as a matter of law because they are barred by the Eleventh Amendment. In support of this assertion, Defendants submit that Plaintiff has sued Defendants solely in their official capacities and seeks only monetary relief.

The Court agrees that to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment bars his claims. The Eleventh Amendment provides as follows:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express

consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "The burden of establishing Eleventh Amendment immunity lies with the state . . . ." *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011). Eleventh Amendment Immunity does not apply "where a state has itself waived its immunity from federal suit" or "where Congress has abrogated the states' immunity." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). Here, Defendants have not waived immunity, as is evident by the fact that they raised it in their Answer and also in their Motion for Judgment on the Pleadings. Accordingly, Plaintiff may not pursue monetary relief against Defendants in their official capacity.

Plaintiff may, however, pursue injunctive relief against Defendants in their official capacities. *See Barker*, 649 F.3d at 433 ("To the extent Barker seeks declaratory and injunctive relief against Defendants in their official capacities, the suit may proceed."); *Evans v. Vinson*, 427 F. App'x 437, 441–42 (6th Cir. 2011) (same); *cf. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State."). In terms of injunctive relief, Plaintiff seeks a transfer to one of four named ODRC facilities, where he asserts that he will be permitted to take his Nazarite Vow.

Plaintiff, in his original and Amended Complaints, has failed to explicitly state the capacity in which he is suing Defendants. The Court must, therefore, apply the "course of proceedings" test to ascertain whether Defendants have notice of Plaintiff's intent to hold them personally liable. *Shepherd v. Wellman*, 313 F.3d 963, 967–68 (6th Cir. 2002) ("Where no explicit statement appears in the pleadings, this Circuit uses a 'course of proceedings' test to determine whether the § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable."); *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) ("When

13

a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether . . . notice has been satisfied."). Under this test, failure to affirmatively state that a defendant is sued in his "individual capacity" is not fatal to the claim where "the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore*, 272 F.3d at 772. In applying the course of proceedings test, the Court considers, "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Shepherd*, 313 F.3d at 969 (citing *Moore*, 272 F.3d at 772 n.1).

Applying the course of proceedings test, the undersigned concludes that Defendants were on notice that they were being sued as individuals. *Garcia v. Dykstra,* 260 F. App'x 887 (6th Cir. 2008), is instructive. In *Garcia*, the United States Court of Appeals for the Sixth Circuit applied the course of proceedings test to conclude that the defendants were on notice that they were being sued in their individual capacity. The *Garcia* plaintiff had not specified that he was suing the defendants in their individual capacities. *Id*. at 894. He collectively prayed for compensatory damages against the group without mentioning any defendant by name. *Id*. at 894–95. The *Garcia* defendants asserted the defense of qualified immunity in both their answer and their amended answer. *Id*. at 895. In concluding that the defendants were on notice, the Sixth Circuit reasoned as follows:

> That [the defendants] asserted a qualified immunity defense in both the answer and the amended answer distinguishes this case from *Shepherd*, making it more factually similar to *Moore*. The qualified immunity defense shows that they were in fact on notice of the possibility of an individual capacity § 1983 claim by the time they filed both the original and the amended answer. *See Lindsay v. Bogle*, 92 F. App'x 165,

14

169 (6th Cir. 2004) (stating that "the assertion of a qualified-immunity defense (even a contingent qualified-immunity defense) indicates that the defendants were aware they could be held personally liable"); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) ("Because qualified immunity is available only in a personal capacity suit . . . the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally."). Thus, the demand for money damages, along with something more, here the qualified immunity defense asserted in the answer and amended answer, demonstrates that [the defendants] were aware of potential liability in their individual capacities.

*Id.* In this case, as in *Garcia*, Plaintiff seeks $10,000 in compensatory damages against Defendants collectively. In addition, Defendants, in their Answer, raised the defense of qualified immunity. (ECF No. 25 at ¶ 13; ECF No. 29 at 13.) *Garcia* persuades this Court to conclude that Defendants were on notice that they were being sued as individuals such that Plaintiff may proceed on his § 1983 claims.

The Court notes that with regard to his RLUIPA claim, Plaintiff may only obtain injunctive relief. *See Sossamon v. Texas*, 131 S.Ct. 1651, 1663 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."); *Colvin,* 605 F.3d at 289 ("[M]onetary damages are not available under RLUIPA."); *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (holding that the plaintiff's attempt to seek damages against the defendant in his personal capacity "cannot be based on [RLUIPA] because the Act does not create a cause of action against state employees in their personal capacity").

## IV.

For the reasons set forth above, it is **RECOMMENDED** Defendants' Motion be **GRANTED IN PART AND DENIED IN PART** such that Plaintiff may proceed on his RLUIPA and § 1983 First Amendment free exercise claim. It is further **RECOMMENDED**, to

the extent Plaintiff seeks to assert it, that his retaliation claim be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that Mr. Free be **DISMISSED** as a Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: June 27, 2012                                    /s/ *Elizabeth A. Preston Deavers*
                                                    Elizabeth A. Preston Deavers
                                                    United States Magistrate Judge