UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD L. QUINN, JR.,

    **Plaintiff,**

v.

    Civil Action 2:11-cv-268
    Judge James L. Graham
    Magistrate Judge Elizabeth P. Deavers

ROBIN KNAB, WARDEN, et al.,

    **Defendants.**

### REPORT AND RECOMMENDATION

Plaintiff, Richard L. Quinn, Jr., an inmate in the custody of the Chillicothe Correctional Institution ("CCI") who is proceeding without the assistance of counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that Defendants impeded his ability to exercise his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment. This matter is before the United States Magistrate Judge for a Report and Recommendation on Defendants' First Motion for Summary Judgment (ECF No. 43), Plaintiff's Memorandum in Opposition (ECF No. 44), and Defendants' Reply (ECF No. 45). Through their Motion, Defendants seek dismissal of Plaintiff's remaining claims on the grounds that he failed to properly exhaust his administrative remedies prior to bringing suit. For the reasons stated below, it is **RECOMMENDED** that Defendants' Motion be **DENIED**.

I. **BACKGROUND**

On December 20, 2010, Plaintiff submitted a Request for Religious Accommodation (Form DRC4326) to the Chaplain's Office at Chillicothe Correctional Institution ("CCI"). (Cleveland Decl. at Ex. 2, ECF No. 43-1; Compl. 14, ECF No. 5.) In his Request for Religious Accommodation, Plaintiff identifies his religion as "Christian Identity." (*Id.*) He explains in an attachment to his request that he identifies himself as "Christian 'Israel' Identity" and that his practice of this religion includes "invok[ing] upon [himself] to take a Vow of the Nazarite for any period seeing fit as the Holy Spirit allows." (Compl. 14–18, ECF No. 5.) He goes on to explain, in detail, what the Vow of a Nazarite entails, referencing Bible verses that he asserts support each of the Vow's components. (*Id.*) For example, he indicates that he "must," among other things: not cut his hair with a razor; not eat certain types of food; not work on the Sabbath; and not touch anything dead. (*Id.*) Plaintiff's requested accommodation includes the following dietary restrictions: no "wine or vinegar of the grape or vine"; no "unclean foods, strong drink, or things of the vine": no consumption of "[a]nything that chews cud but divide not the hoof"; no "[s]wine - Jellotin-based products, no lard-butter product"; "all medication [must be administered in] tablet form or Kosher cups"; no consumption of animals with scales or fins; and no "animal-based oil, fungus, spores, and the like." (*Id*. at 15–16.) He also requests to "celebrate the festival of Yahvah," which he indicates begins "on the fifteenth day of the seventh month" and includes "sacred rest" on the first and eighth day of the celebration. (*Id*. at 16.)

On January 12, 2011, approximately three weeks after Plaintiff submitted his request, the chaplain recorded his recommendation on Form DRC4327. (*Id*. at 8.) Form DRC4327, titled "Response to Request for Religious Accommodation," requires a recommendation from the prison's chaplain and review committee as well as a final decision or referral from the warden.

2

In recommending the denial of Plaintiff's request, the chaplain stated as follows:

> Chaplain does not recommend request for Offender Quinn hair as Nazarite Vow.
>
> Offender Quinn list[s] his Religion as Christian Identity. "Christian Identity is a diverse and loosely organized movement based on an elaborate belief system that promotes white supremacy and anti-Semitism." [Cited from article "Christian Identity Movement History, Beliefs and Practices] taken from Internet Christian Identity see attached article[.]
>
> Secondly, a Nazarite Vow was an Old Testament vow of separation for the Ancient Jews and not a Religion. Policy states "The chaplain may consider whether the request is consistent with the established traditions of the faith group, although that factor need not be controlling. The chaplain may also consider any operational difficulties presented by the request and any obvious and reasonable alternatives."

(*Id*.) There is no evidence that the chaplain complied with the Ohio Department of Rehabilitation and Correction's ("ODRC") Policy 72-REG-02-(G)(3), which requires the chaplain to meet with the inmate to discuss his request prior to issuing a recommendation.

On January 25, 2011, CCI's Religious Services Committee noted on Form DRC4327 that it concurred with the chaplain. The Committee offered no separate analysis. That same day, CCI's Warden noted on the form that Plaintiff's request was "disapproved." ODRC's Office of Religious Services Administrator received copies of Plaintiff's Request for Religious Accommodation and CCI's Response as reflected on Form DRC4327 on January 26, 2011. (*See* Form DRC4327, ECF No. 43-1.) The record contains no evidence indicating when Plaintiff received notice of the CCI's Warden's disapproval of his request. Plaintiff did, however, attach to his Complaint correspondence from CCI's Religious Services Committee, which reflected that the Committee concurred with the chaplain's recommendation. (Compl. 7, ECF No. 5.) This correspondence is dated February 16, 2011, and advises Plaintiff as follows: "Your request has been forwarded to Central Office for the final approval/disapproval and notification of that

3

decision will be sent to you from that office.  This documentation is to be used until which time as the final approval/disapproval is made." (*Id.*)

On February 24, 2011, it appears that Plaintiff attempted to appeal or object to the denial of his request for a religious accommodation.  He submitted his appeal/objection to ODRC's Office of Religious Services Administrator on a form titled "Informal Complaint Resolution." (Feb. 24, 2011 Appeal/Objection, ECF No. 43-1.)  In his attempted appeal/objection, Plaintiff complains that ODRC did not follow Policy Number 72-REG-02 and explains that he was not able to meet with the chaplain.  He references attachments, but Defendants did not include any attachments with the copy they submitted to this Court in connection with their Motion.  On March 4, 2011, a staff member from ODRC's Office of Religious Services Administrator responded to Plaintiff.  Her response, however, is illegible due the quality of the copy Defendants filed with the Court.

Plaintiff filed the instant action on March 25, 2011.

**II.**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific

facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

Defendants ask the Court to dismiss Plaintiff's remaining RLUIPA and § 1983 First Amendment free exercise claims on the grounds that he failed to properly satisfy the exhaustion requirements set forth in the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA . . . .'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Defendants bear the burden of proof on the affirmative defense of exhaustion. *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citations omitted) ("[F]ailure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants."). "Summary

judgment is appropriate only if defendants establish the absence of a genuine dispute as to any material fact regarding non-exhaustion." *Surles*, 678 F.3d at 455.  "When a prisoner's complaint contains a combination of exhausted and unexhausted claims, courts are to dismiss the unexhausted claims but retain and address the exhausted claims." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 500 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 220–24).

Under 42 U.S.C. § 1997e(a), as amended by the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)).  This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").

In Ohio, the general inmate grievance procedure is set forth in Ohio Administrative Code § 5120-9-31.  Section 5120-9-31(B), however, provides that "[t]he inmate grievance procedure will not serve as an additional or substitute appeal process for . . . those issues or actions which already include an appeal mechanism beyond the institutional level or where a final decision has

6

been rendered by central office staff." Ohio Admin. Code § 5120-9-31(B).  ODRC has promulgated specific procedures for handling inmates' requests for religious affiliation changes and accommodations.  These specific procedures are embodied in ODRC Policy Number 72-REG-02.  This Policy includes an appeal mechanism beyond the institutional level for certain types of religious-accommodation requests and instructs that the central office will render the final decision with regards to other types of requests, regardless of whether an inmate appeals.  Consequently, pursuant to Ohio Administrative Code § 5120-9-31(B), ODRC Policy Number 72-REG-02 is the exclusive administrative procedure for inmates seeking religious accommodations.  *See* Ohio Admin. Code § 5120-9-31(B).

ODRC Policy Number 72-REG-02(G) provides that an inmate seeking to request a religious accommodation shall fill out a Request for Religious Accommodation form (Form DRC4326) and submit the completed form to the chaplain.  ODRC Policy No. 72-REG-02(G)(1-3).  The chaplain is then required to meet with the inmate, providing the inmate with the opportunity to explain and discuss his request.  ODRC Policy No. 72-REG-02(G)(3).  Within fourteen days, the chaplain must record his recommendation, setting forth the bases for his recommendation, and refer the inmate's request to the institution's Religious Accommodation Review Committee.  ODRC Policy No. 72-REG-02(G)(4-5).  Next, the Committee must evaluate the inmate's request, together with any supporting materials and the chaplain's recommendation; record its recommendation along with a brief explanation of its reasons on the form titled "Response to Request for Religious Accommodation" (Form DRC4327); and forward its recommended response to the managing officer/designee.  ODRC Policy No. 72-REG-02(G)(6-8).  The managing officer/designee must then review the Committee's recommendation and record his decision on the Response to Request for Religious Accommodation form (Form

DRC4327), forwarding the decision to the inmate and chaplain.  ODRC Policy No. 72-REG-02(G)(8-10).

Generally, the decision of the managing officer/designee is final.  An inmate desiring to appeal a managing officer/designee's final decision must, within fifteen days, submit a form titled "Offender's Appeal of Decision Regarding Religious Accommodation" (Form DRC4442) to the Religious Services Administrator.  ODRC Policy No. 72-REG-02(G)(10-11).

If, however, the request involves certain enumerated matters, the Religious Services Administrator, not the managing officer/designee, shall make the final decision.  ODRC Policy No. 72-REG-02(G)(10).  In such instances, the managing officicer/designee is required to make a recommendation and forward the Response to Request for Religious Accommodation (Form DRC4327) and all accompanying materials to the Religious Services Administrator for a final decision.  (*Id.*)  The inmate is permitted to object to such a recommendation.  ODRC Policy No. 72-REG-02(G)(11).  ODRC Policy Number 72-REG-02(H) sets forth the "matters [that] shall be referred to the Religious Services Administrator" and includes, among other matters, requests involving specialized diets and for recognition of new religious holidays.  ODRC Policy No. 72-REG-02(H)(1-3).  In pertinent part, this Section provides as follows:

> The following matters shall be referred to the Religious Services Administrator:
>
> 1. New dietary requests: Requests that would require the creation of a special diet, a religious "feast" menu, or that would require the purchase of special foods (e.g. kosher, halal, etc.) not currently offered, or which would expand access to such diets to different or additional religious groups m ust be referred to the Religious Services Administrator for final decision.  Decisions to accommodate an indi vidual inmate with existing dietary options (e.g. meatless diet, etc.) can be made at the institution.
>
> \*   \*   \*
>
> 3. The recognition of any religious holiday not previously observed or

8

recognized.

(*Id.*)

The Undersigned concludes that Defendants have not satisfied their initial burden to show that Plaintiff failed to fully exhaust his administrative remedies. Defendants argue that Plaintiff's efforts were insufficient because he "failed to submit the proper form and proper documentation to effectuate an appeal of the January 25, 2011 denial of his December 20, 2012 request." (Defs.' Mot. 6, ECF No. 43.) Defendants maintain that Plaintiff's March 2, 2011 attempted appeal/objection was deficient because it was untimely and submitted on the wrong form.

The flaw in Defendants' position is that under ODRC Policy Number 72-REG-02, CCI's Warden did not have authority to issue a final, appealable decision. This is because Plaintiff's religious accommodation, if granted, would require the creation of a special diet and the recognition of a religious holiday. Indeed, his issuance of a final a decision disapproving Plaintiff's request on January 25, 2011, violated ODRC Policy Number 72-REG-02(H)(10). (*See* Form DRC4327, ECF No. 43-1 (marking the box labeled "Disapproved" instead of the box labeled "Refer to Reg. Religious Services Admin.").) CCI's Warden should have forwarded his response (Form DRC4327) and all accompanying materials to the Religious Services Administrator for a final decision. Upon receiving the CCI's Warden's decision (as reflected on Form DRC4327 and accompanying materials) on January 26, 2011, the Religious Services Administrator took no action to remedy the CCI's Warden's violation of policy. Nor did the Religious Services Administrator take action upon receipt of Plaintiff's February 24, 2011 attempted appeal/objection wherein he specifically complained that ODRC Policy Number 72-REG-02 was not followed. (*See* Feb. 24, 2011 Appeal/Objection, ECF No. 43-1.)

9

Plaintiff, in properly filling out the requisite Request for Religious Accommodation form (Form DRC4326) and submitting it to the chaplain, satisfied his obligations under ODRC Policy Number 72-REG-02. Plaintiff was entitled to interpret the Religious Services Administrator's failure to remedy the policy deviations and issue a final decision to be a denial of his request. *See Risher v. Lappin*, 639 F.3d 236, 240–41 (6th Cir. 2011) (holding that the inmate "was entitled to consider the absence of a response to be a denial" of his grievance, explaining that the inmate "was not required to make additional efforts beyond the scope of the Bureau's regulations" where the prison staff had failed to follow its own procedures); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance); *Hughes v. Lavender*, No. 2:10-cv-674, 2011 WL 1337155, at *10 (S.D. Ohio Apr. 6, 2011) (denying the defendants' motion for summary judgment on the grounds of exhaustion where the plaintiff submitted evidence indicating that the defendants had failed to timely respond to his complaints); *Nassar v. Warden, Butler Cnty. Jail*, No. 1:10-cv-031, 2011 WL 7268004, at *5 (S.D. Ohio Sept. 1, 2011) (denying the defendants' motion for summary judgment on the grounds of exhaustion where the defendants failed to offer evidence that the jail officials "properly responded to [the] plaintiff's grievances in accordance with their own policy"). As the Court of Appeals noted in *Risher*: "When *pro se* inmates are required to follow agency procedures to the letter in order to preserve their federal claims, we see no reason to exempt the agency from similar compliance with its own rules." 639 F.3d at 241.

In sum, Defendants have failed to demonstrate that Plaintiff's efforts were insufficient to exhaust his administrative remedies with regards to his request for a religious accommodation. Because Defendants have failed to satisfy their burden, the Undersigned recommends that their

Motion be denied.

## IV.

For the reasons set forth above, it is **RECOMMENDED** that Defendants' First Motion for Summary Judgment be **DENIED**.  (ECF No. 43.)

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 18, 2013                             /s/ *Elizabeth A. Preston Deavers*
                                                   Elizabeth A. Preston Deavers
                                                   United States Magistrate Judge